Zoila Gloria and María Eugenia López, Plaintiffs and Appellants, *v.* Víctor Díaz Canales and Federal Insurance Company, Defendants and Appellees.

No. R-68-322.    Decided December 10, 1971.

*Ángel Viera Martínez* and *César Andreu Ribas* for appellants.
*Francisco Ponsa Feliú, Wilson F. Colberg,* and *Miguel A. Valldejuli* for appellees.

PER CURIAM: The Superior Court, San Juan Part, rendered judgment dismissing the complaint for damages arising from an automobile accident, filed by Zoila Gloria López and her sister María Eugenia López, and Employers Mutuals of Wausau, the latter subrogated to the damages sustained by the vehicle of Zoila Gloria López, against Víctor Díaz Canales and his insurer, U.S. Casualty Company.

The errors assigned in this appeal, except for one of them, are directed to challenge the weighing of the evidence made by the trial court.

The accident took place between 6:00 and 6:30 in the afternoon of June 15, 1962, in State Highway No. 110 which goes from Moca to Mayagüez and it consisted of the collision of a Pontiac-Tempest make vehicle, property and driven there and then by plaintiff Zoila Gloria López, who was accompanied by her mother, Gloria Martín Pabón, and the Ford make vehicle, driven there by its owner, defendant Víctor Díaz Canales. As a consequence of the injuries received in that accident, Gloria Martín Pabón died; coplaintiff Zoila

Gloria López suffered serious injuries and the same can be said of defendant, although in a lesser degree.

There were no eyewitnesses of the accident, except co-plaintiff Zoila Gloria López and defendant, Díaz Canales.

There is an unreconcilable conflict between the accounts given by both of them in regard to the manner in which the accident occurred. Plaintiff's account and her evidence was to the effect that the day of the accident she was driving her Pontiac-Tempest make automobile, 1961 model, along State Highway No. 110, going from Moca to Mayagüez. Her mother accompanied her. Before the accident occurred plaintiff was going up a slope. Above there was level ground and a narrow semicurve. Upon leaving the semicurve she was going along her right lane and then she found that defendant's vehicle was approaching in the opposite direction along the same lane occupied by her vehicle. She steered to the left in order to avoid the collision, but defendant also swerved his vehicle towards the left and there he ran head on into her vehicle. The vehicles were destroyed, attached one to the other almost in the middle of the highway. The first person to arrive at the place was Ramón Figueroa, who testified at the trial on plaintiff's side. This witness testified that he was driving his automobile along the highway from Mayagüez to Moca; that some moments before the accident, a Ford automobile going at about 35 miles passed him at a slippery dangerous curve; that at that curve there are signs warning about its danger-ous condition; that a few seconds afterwards he heard a crash, he thought it was an accident, he hastened the speed of his vehicle and farther on he found the accident; that one of the vehicles involved in the accident was the Ford which had passed him sometime before; that it was clear, the pavement was rather good and it was dry; that the vehicles were attached, completely destroyed, rather to the center of the highway; not completely head on, but halfway slanted. The witness did not witness the accident; it happened at about an

hectometer from where the Ford passed him; an automobile could pass along both sides of the vehicles involved in the collision.

On the contrary, defendant's evidence sought to establish that when he was approaching the semicurve, at about a distance of 30 feet, plaintiff's vehicle appeared, jumping, jolting from side to side, swaying, out of control. "I started to stop immediately. I swerved to the right. The car was already out of control, it ran into my right-hand side and hit me when I was halfway on the pavement and the other half off the pavement." His vehicle received the impact on the left front side at an angle of some 120 degrees.

The trial court believed defendant's testimony and considering the other evidence he presented, concluded:

"3.—Upon rounding a curve towards the left, plaintiff Zoila Gloria López lost control of her vehicle and started zigzagging at the time she kept on running towards Mayagüez. About 100 meters after having left the curve in such a way, and going on a straight line of about 300 meters, the vehicle driven by said coplaintiff entered defendant Víctor Díaz Canales' right lane and crashed against the latter's vehicle, which at the time of the impact was almost at a halt on its right side near the slope, because he had applied the brakes, and the wheels of the right-hand side of the vehicle were on the walk and off the highway paved area, at about two or three feet from where the latter ends."

The trial court settled in this manner the conflict in the evidence in favor of the defendant. We have carefully examined the transcript of the evidence, as well as the documentary evidence presented by the parties, and we cannot agree with appellants in that in thus doing the trial court incurred error.

Defendant's testimony with regard to the place where the collision occurred and the resulting position of both vehicles is corroborated by the then Prosecuting Attorney Sergio Vélez González, who went to the place of the accident that

afternoon, in fulfillment of the duties of his position. In some photographs offered by the defendant, the aforesaid officer identified the place and position of the vehicles after the collision, corroborating what defendant had stated to that respect. In regard to those particulars, defendant's testimony was also corroborated by policeman Victorio Santiago, who also went to the place in order to investigate the accident.

Plaintiff's evidence sustaining that after the collision the traffic of automobiles could flow on both sides of the vehicles involved in the collision was contradicted not only by the defendant, but also by the aforementioned prosecuting attorney and the policeman. In the photographs it can be clearly observed that after the collision, defendant's vehicle was to the far right with its two right wheels at about two or three feet off the highway's curb. This is obviously opposite to the theory that the vehicles involved in the collision remained almost at the center of the highway. Therefore, the trial judge had before his consideration other facts sufficient to believe, as he did, defendant's testimony. The findings of fact issued by the trial judge are not erroneous and therefore, we should not alter them on review. Defendant's account having been believed as it was, there is no ground to conclude that, although not in everything, at least defendant was negligent in part.

The fact that the trial court rendered judgment before receiving a certificate from the Department of Public Works on the width, lanes, walks, and shoulders of the highway where the accident occurred, and the change, if any, in the enumeration of the kilometers, and for which the court had granted time to plaintiff, is assigned as error.

The evidence offered by both parties as to the specific place where the accident occurred makes reference to the width, lanes, and walks of the highway. Even granting that the error assigned was committed, the same would not justify

the reversal of the reviewed judgment. In view of all the evidence considered by the trial court, it would be highly speculative to assume that the aforesaid certificate could change the opinion of that court in regard to the manner in which the accident occurred and the proximate cause of the same. In the photographs admitted in evidence the details which the certificate might contain can be observed, although not with mathematical accuracy, and in the evidence there is a detailed explanation of the same.

In view of the fact that the findings of the trial court determining that the proximate and sole cause of the accident was plaintiff's negligence, we have no basis to dismiss the pronouncement in regard to plaintiffs' obstinacy and to relieve them from the order to pay attorney's fees.

The judgment object of this appeal will be affirmed.

Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, and Mr. Justice Martín took no part in the decision of this case.